O

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY RAND; GARY RAND AS TRUSTEE OF THE RAND 1992 IRREVOCABLE TRUST; SUZANNE E. RAND-LEWIS; SUZANNE E. RAND-LEWIS AS TRUSTEE OF THE SUZANNE E. RAND-LEWIS FAMILY TRUST DATED AUGUST 17, 1993; LESLIE B. RAND-LUBY; LESLIE B. RAND-LUBY AS TRUSTEE OF THE LESLIE B. RAND-LUBY LIVING TRUST DATED NOVEMBER 10, 1995,<br><br>                Plaintiffs,<br><br>      v.<br><br>MIDLAND NATIONAL LIFE INSURANCE; MICHAEL L. KELLY; and DOES 1 through 100,<br><br>                Defendants. | CV 19-3104-RSWL-JEM<br><br>**ORDER re: Plaintiffs' Motion to Remand** [27]; **Defendants' Motion to Dismiss** [15, 19] |

Currently before the Court is Plaintiffs Gary Rand; Gary Rand as Trustee of the Rand 1992 Irrevocable Trust; Suzanne E. Rand-Lewis; Suzanne E. Rand-Lewis as

1

Trustee of the Suzanne E. Rand-Lewis Family Trust; Leslie B. Rand-Luby; and Leslie B. Rand-Luby as Trustee of the Leslie B. Rand-Luby Living Trust's (collectively, "Plaintiffs") Motion to Remand [27], and Defendants Midland National Life Insurance ("MNLI") and Michael L. Kelly's ("Kelly") (collectively, "Defendants") Motion to Dismiss [15, 19]. Having reviewed all papers submitted pertaining to the Motions, the Court **NOW FINDS AND RULES AS FOLLOWS:** the Court **DENIES** Plaintiffs' Motion to Remand and **GRANTS** Defendants' Motion to Dismiss **WITH LEAVE TO AMEND.**

## I. BACKGROUND

### A. Factual Background

Plaintiffs are all residents of Los Angeles, California, and insureds, owners, and beneficiaries of the Policy.[1] Compl. ¶ 1, ECF No. 1-1. Rand purchased the Policy in the early 1980s and made his children, the Co-Plaintiffs, Policy owners. Id. ¶ 8. Defendant MNLI was Plaintiffs' insurer and Defendant Kelly was the former Regional Sales Director at MNLI. Pls.' Mot. at 3:18-19, ECF No. 27; see also Defs.' Notice of Removal at 3:7-8, ECF No. 1.

Plaintiffs assert that the Policy had set premium costs, with costs to be calculated monthly by a set

---

[1] The Complaint was filed on behalf of Rand and his two daughters, Suzanne and Leslie, suing in their individual capacities and as trustees for three family trusts established by the Rand family—the Rand 1992 Irrevocable Trust, the Suzanne E. Rand-Lewis Family Trust Dated August 17, 1993, and the Leslie B. Rand-Luby Living Trust Dated November 10, 1995. Compl. ¶ 1.

formula.  Compl. ¶ 8.  Plaintiffs allege that rather than using the set formula, Defendant MNLI increased costs based on an undisclosed formula to get Plaintiffs to relinquish the Policy.  <u>Id.</u>  When Rand asked for information regarding the increased costs,[2] Defendant MNLI provided a vague response.  <u>Id.</u> ¶¶ 11-12.  Rand was then allegedly referred to Defendant Kelly, who was also unhelpful.  <u>Id.</u> ¶ 11.  Plaintiffs claim Defendant Kelly was their insurance broker.  Pls.' Mot. at 3:18-19.  Meanwhile, Defendants assert that Defendant Kelly was never associated with the Policy.  Defs.' Notice of Removal ¶ 24.  <u>See</u> <u>generally</u> Declaration of Michael L. Kelly in Support of Removal ("Kelly Decl."), ECF No. 3; Declaration of Kristina Seekings in Support of Removal ("Seekings Decl."), ECF No. 5; Declaration of Holly Johnson in Support of Removal ("Johnson Decl."), ECF No. 4; Declaration of Nick Nelson in Support of Removal ("Nelson Decl."), ECF No. 6.

Subsequently in 2017, Defendant MNLI charged Rand a premium payment of $28,708.19 to continue the Policy.  <u>See</u> Compl. ¶ 9.  Rand contested the amount, as he had already allegedly paid over one million dollars in premiums over the life of the Policy.  <u>Id.</u>  Further,

---

[2] Rand asked why charges were taken from the Policy value, what the charges were, for an accounting, for Defendants to state how the charges were calculated, what Defendants' basis for the Policy value was, for the amount of premiums Defendants were owed, for an accounting of the premiums paid, and for specific facts as to the charges with reference to the Policy provisions. Compl. ¶ 11, ECF No. 1-1.

Plaintiffs contend that when Rand offered a different premium payment, Defendant MNLI improperly refused. Id. Consequently, Defendant MNLI claimed the Policy lapsed. Id. ¶ 14.

On April 15, 2017, Defendant MNLI terminated the Policy and notified Rand of the termination by letter. Id. Plaintiffs allege that such termination was improper, contending that all owners of the Policy should have been notified.[3] Id. As a result, Plaintiffs assert that the Policy remains in full effect. Id. ¶¶ 8, 19.

Plaintiffs further allege that to reinstate the Policy, Defendants claimed $28,708.19 and required Rand to provide full medical underwriting, documentation, and release of health information. Id. ¶ 9. Plaintiffs assert that Defendants knew such requirements would prevent Rand from reinstating the Policy. Pls.' Mot. at 3:24-27, 4:1-2. Plaintiffs now bring this Action requesting damages, an accounting, reinstatement of the Policy, and disgorgement of funds. Compl. at 25-26.

///

---

[3] The Policy states that MNLI will "mail the Owner notice, at his last known address, of the amount of premium that will be sufficient to continue [the] policy . . . ." Policy at 5, ECF No. 1-2. Plaintiffs contend that termination was not proper under this provision because Plaintiffs Rand 1992 Trust Irrevocable Trust, Trustee Suzanne E. Rand-Lewis, and Trustee Leslie B. Rand-Luby are owners of the Policy who were not notified of its termination. Compl. ¶ 8, ECF No. 1-1.

## B.  Procedural Background

Plaintiffs filed the Complaint [1-1] in the
Superior Court of the State of California, County of
Los Angeles, on March 13, 2019, alleging breach of
contract amongst other related claims.[4]  Defendants
removed this Action to this Court on April 22, 2019
[1].

On April 29, 2019, Defendant MNLI filed the instant
Motion to Dismiss Plaintiffs' Complaint [15].  On May
7, 2019, Defendant Kelly a Notice of Motion to Dismiss
[19] and Joinder [20], adopting Defendant MNLI's
Motion.  On May 21, 2019, Plaintiffs' filed their
Opposotion [26].  On May 28, 2019, Defendant MNLI filed
its Reply [30], which Defendant Kelly joined as well
[29].

Plaintiffs filed the instant Motion to Remand [27]
on May 22, 2019.  Defendants filed their Opposition
[32] on June 4, 2019.  Plaintiffs filed their Reply
[37] on June 10, 2019.

///

---

[4] Plaintiffs brought thirteen claims in total.  Compl. at 1,
ECF No. 1-1.  Against Defendant MNLI, Plaintiffs claim: 1) breach
of contract, 2) breach of the implied covenant of good faith and
fair dealing, 3) violation of California Administrative
Regulations Section 2695.7, and 4) unjust enrichment; violation
of constructive trust; and an accounting.  Id.  Against Defendant
Kelly, Plaintiffs claim: 5) breach of contract, 6) breach of
fiduciary duties, and 7) violation of the Consumer Legal Remedies
Act.  Id.  Against Defendants jointly, Plaintiffs assert: 8)
violation of Business & Professions Code Section 17200, 9)
intentional infliction of emotional distress, 10) fraud, 11)
negligent misrepresentation, 12) concealment, and 13) elder
abuse.  Id.

**II. DISCUSSION**

**A.    Legal Standard**

1.    Removal

Civil actions may be removed from state court if a federal court has original jurisdiction.  See Syngenta Crop Prot., Inc. v. Henson, 123 S. Ct. 366, 370 (2002) ("Under the plain terms of § 1441(a), in order properly to remove [an] action pursuant to that provision, . . . original subject-matter jurisdiction [must] lie[] in the federal courts.").  Diversity jurisdiction exists in all civil actions between citizens of different states where the amount in controversy exceeds $75,000, exclusive of interest and costs.  28 U.S.C. § 1332.  There must be complete diversity of citizenship, meaning "each of the plaintiffs must be a citizen of a different state than each of the defendants."  Morris v. Princess Cruises, Inc., 236 F.3d 1061, 1067 (9th Cir. 2001) (citing Caterpillar Inc. v. Lewis, 117 S. Ct. 467, 472 (1996)). Federal question jurisdiction exists in "all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.

"The burden of establishing jurisdiction falls on the party invoking the removal statute, which is strictly construed against removal."  Sullivan v. First Affiliated Sec., Inc., 813 F.2d 1368, 1371 (9th Cir. 1987) (internal citations omitted).  Courts resolve all ambiguities "in favor of remand to state court."

<u>Hunter v. Philip Morris USA</u>, 582 F.3d 1039, 1042 (9th Cir. 2009) (citing <u>Gaus v. Miles, Inc.</u>, 980 F.2d 564, 566 (9th Cir. 1992)).  A removed case must be remanded "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c).

    2.  <u>Fraudulent Joinder</u>

"If [a] plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent." <u>McCabe v. Gen. Foods Corp.</u>, 811 F.2d 1336, 1339 (9th Cir. 1987).  The fraudulent joinder doctrine requires courts to disregard the citizenship of defendants when no viable cause of action has been stated against them, or when evidence presented by the removing party shows that there is no factual basis for the claims alleged against the defendants.  <u>See</u> <u>Morris</u> 236 F.3d at 1067-68.

"There is a presumption against finding fraudulent joinder, and defendants who assert that [a] plaintiff has fraudulently joined a party carry a heavy burden of persuasion."  <u>Plute v. Roadway Package Sys., Inc.</u>, 141 F. Supp. 2d 1005, 1008 (N.D. Cal. 2001).  "[T]he defendant must demonstrate that there is *no possibility* that the plaintiff will be able to establish a cause of action in [s]tate court against the alleged sham defendant."  <u>Good v. Prudential Ins. Co. of Am.</u>, 5 F.

Supp. 2d 804, 807 (N.D. Cal. 1998) (emphasis added).
In determining whether the defendant has met this
burden, courts may consider the plaintiff's complaint
and additional "summary judgment type evidence."
<u>Morris</u>, 236 F.3d at 1068.

Fraudulent joinder is shown via "1) actual fraud in
the pleading of jurisdictional facts, or 2) inability
of the plaintiff to establish a cause of action against
the non-diverse party in state court." <u>Hunter v.
Philip Morris USA</u>, 582 F.3d 1039, 1044 (9th Cir. 2009)
(quoting <u>Smallwood v. Illinois Cent. RR. Co.</u>, 385 F.3d
568, 573 (5th Cir. 2004)).  The latter is shown if a
defendant establishes that "individuals joined in the
action cannot be liable on any theory." <u>Ritchey v.
Upjohn Drug Co.</u>, 139 F.3d 1313, 1318 (9th Cir. 1998).
However, "if there is a possibility that a state court
would find that the complaint states a cause of action
against any of the resident defendants, the federal
court must find that the joinder was proper and remand
the case to the state court." <u>Hunter</u>, 582 F.3d 1039,
1046 (9th Cir. 2009) (quoting <u>Tillman v. R.J. Reynolds
Tobacco</u>, 340 F.3d 1277, 1279 (11th Cir. 2003)).

3.  <u>Motion to Dismiss</u>

Federal Rule of Civil Procedure 12(b)(6) allows a
party to move for dismissal of one or more claims if
the pleading fails to state a claim upon which relief
can be granted.  A complaint must "contain sufficient
factual matter, accepted as true, to state a claim to

relief that is plausible on its face." <u>Ashcroft v.</u>
<u>Iqbal</u>, 556 U.S. 662, 678 (2009) (quotation omitted).
Dismissal is warranted for a "lack of a cognizable
legal theory or the absence of sufficient facts alleged
under a cognizable legal theory." <u>Balistreri v.</u>
<u>Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th Cir.
1988) (citation omitted).

In ruling on a 12(b)(6) motion, a court may
generally consider only allegations contained in the
pleadings, exhibits attached to the complaint, and
matters properly subject to judicial notice. <u>Swartz v.</u>
<u>KPMG LLP</u>, 476 F.3d 756, 763 (9th Cir. 2007). A court
must presume all factual allegations of the complaint
to be true and draw all reasonable inferences in favor
of the non-moving party. <u>Klarfeld v. United States</u>,
944 F.2d 583, 585 (9th Cir. 1991). The question is not
whether the plaintiff will ultimately prevail, but
whether the plaintiff is entitled to present evidence
to support the claims. <u>Jackson v. Birmingham Bd. of</u>
<u>Educ.</u>, 544 U.S. 167, 184 (2005) (quoting <u>Scheuer v.</u>
<u>Rhodes</u>, 416 U.S. 232, 236 (1974)). While a complaint
need not contain detailed factual allegations, a
plaintiff must provide more than "labels and
conclusions" or "a formulaic recitation of the elements
of a cause of action." <u>Bell Atl. Corp. v. Twombly</u>, 550
U.S. 544, 555 (2007). However, a complaint "should not
be dismissed under Rule 12(b)(6) 'unless it appears
beyond doubt that the plaintiff can prove no set of

facts in support of his claim which would entitle him to relief.'" <u>Balistreri</u>, 901 F.2d at 699 (citing <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957)).

**B.   Discussion**

   1.  <u>Motion to Remand</u>

Plaintiffs contend that this Court lacks subject matter jurisdiction over this Action.  The Court undisputably lacks federal question jurisdiction; therefore, the issue is whether the Court has diversity jurisdiction.

   a.  *The Amount in Controversy is Satisfied*

A district court may consider whether it is facially apparent from the complaint that the jurisdictional amount is satisfied.  <u>See Singer v. State Farm Mut. Auto. Ins. Co.</u>, 116 F.3d 373, 377 (9th Cir. 1997).  If not, the court may consider facts in the removal petition and require parties to submit summary-judgment-type evidence regarding the amount in controversy.  <u>Id.</u> (citation omitted).  Further, where the amount in controversy is not facially apparent, the removing party must establish, by a preponderance of evidence, that the jurisdictional amount has been met. <u>See Sanchez v. Monumental Life Ins. Co.</u>, 102 F.3d 398, 404 (9th Cir. 1996) ("[W]here a plaintiff's state court complaint does not specify a particular amount of damages, the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds $[75],000.").

10

In declaratory judgment actions about whether an insurance policy is in effect or not, the policy's face amount controls the amount in controversy. <u>Elhouty v. Lincoln Benefit Life Co.</u>, 886 F.3d 752, 756 (9th Cir. 2018). Here, Plaintiffs argue that they are not seeking a declaratory judgment that the Policy is in effect. Pls.' Mot. at 8:10-12. However, Plaintiffs' Complaint suggests otherwise. In their Complaint, Plaintiffs seek equitable relief, including a reinstatement of the Policy. Compl. ¶¶ 64, 121 ("Plaintiff seeks equitable relief including a full accounting, reinstatement of the Policy and restitution."). Plaintiffs also assert that the Policy was improperly terminated and thus "remains in full force and effect." <u>See</u> <u>id.</u> ¶ 4. Thus, at issue is whether the Policy was properly terminated. <u>See</u> <u>Elhouty</u>, 886 F.3d at 756 ("[I]t is long-established that in declaratory judgment actions about whether an insurance policy is in effect or has been terminated, the policy's face amount is the measure of the amount in controversy."). Accordingly, "the value of the object of the litigation" is the Policy itself, which provides for a $2.5 million death benefit. <u>Id.</u> at 755; <u>see also</u> <u>Budget Rent-A-Car, Inc. v. Higashiguchi</u>, 109 F.3d 1471, 1473 (9th Cir. 1997) (finding that where a policy's validity is at issue, the policy limit is the amount in controversy). As such, the Policy's $2.5 million face amount is the amount in controversy,

11

satisfying the $75,000 jurisdictional minimum.  <u>See</u>
<u>Sandstrom v. Protective Life Ins. Co.</u>, No. 13-1002-JFW
(Opx), 2013 WL 12123308, at *2 (C.D. Cal. Mar. 14,
2013) (finding validity of a life insurance policy at
issue because the plaintiff alleges that the defendant
"improperly canceled the policy").

Because the Policy's face value satisfies the
amount in controversy, the Court need not consider
Plaintiffs' additional requests for damages, attorneys'
fees, and other relief in making its amount in
controversy determination.

b.   *There is Complete Diversity Because*
*Defendant Kelly is a Sham Defendant*

Plaintiffs are California residents, Defendant MNLI
is an Iowa corporation, and Defendant Kelly is a
California resident.  Notice of Removal ¶¶ 6-7.
Defendants argue that Defendant Kelly was never
Plaintiffs' agent and that he was solely joined to
defeat diversity jurisdiction.  Plaintiffs argue that
Defendant Kelly was their broker and was properly
joined, and as a result, this case should be remanded.

"[A] federal court must find that a defendant was
properly joined and remand the case . . . if there is a
possibility that a state court would find that the
complaint states a cause of action against any of the
[non-diverse] defendants."  <u>Grancare, LLC v. Thrower by</u>
<u>& through Mills</u>, 889 F.3d 543, 549 (9th Cir. 2018)
(internal quotations and citation omitted).  Because

12

Defendant Kelly's role regarding the Policy is in dispute, Plaintiffs argue that "all disputed questions of fact and all ambiguities" must be resolved in their favor. Pls.' Mot. to Remand at 10:22-24. On the contrary, the Court may look beyond Plaintiffs' Complaint to resolve any factual disputes. <u>See</u> <u>Mississippi ex rel. Hood v. AU Optronics Corp.</u>, 134 S. Ct. 736, 745 (2014) (holding that courts may "look behind the pleadings to ensure that parties are not improperly creating or destroying diversity jurisdiction"). Similarly, the Ninth Circuit has upheld rulings where "a defendant presents extraordinarily strong evidence . . . that a plaintiff could not possibly prevail on her claims against the fraudulently joined defendant." <u>Grancare</u>, 889 F.3d at 548 (citation omitted).

Here, Defendant Kelly was not a party to any policy on which Plaintiffs could predicate a claim against him. Defendants' evidence shows that Defendant Kelly had no connection to the Plaintiffs or the Policy whatsoever. In his declaration, Defendant Kelly states that he "never had any responsibility for the Plaintiffs or their Policy," does not even recognize the names of Plaintiffs, and that he has never served as the agent or broker for any MNLI policy associated with Plaintiffs. Kelly Decl. ¶¶ 4-6. Defendant Kelly further states that it is his business practice to maintain records of any contacts or communications with

existing or prospective insurance clients, and these records do not reflect any contact with, or concerning, Plaintiffs. Id. ¶¶ 7-8. Holly Johnson, a current employee of Defendant Kelly, and Kristina Seekings, a former employee who worked for Defendant Kelly during the relevant time period, both maintained and reviewed these business records and confirmed that there was no indication Defendant Kelly ever had contact with or served as the agent for Plaintiffs. See generally Johnson Decl.; Seekings Decl. Nick Nelson, Vice President of Administration for Defendant MNLI, confirms that neither does MNLI have such records, and that "no compensation was ever paid to Kelly relating to the sale or servicing of [the] Policy . . . ." Nelson Decl. ¶ 23. Nelson further states that "no individual servicing agent in the State of California or elsewhere was ever assigned to [the] Policy . . . ."[5] Nelson Decl. ¶ 19.

Plaintiffs have not put forth any competing evidence. As support, Plaintiffs have only offered a declaration by Plaintiffs' counsel. The declaration

---

[5] In their Reply, Plaintiffs argue that even if Defendant Kelly was fraudulently joined, there could never be complete diversity in this Action because Defendant MNLI was required to conduct business in California through a properly licensed California agent. See Pls.' Reply at 8:24-26. However, Defendant MNLI maintains that no agent was ever assigned to the Policy. Nelson Decl. ¶ 19, ECF No. 6. Even assuming Defendant MNLI did properly abide by this requirement, the issue before the Court is whether Defendant Kelly was fraudulently joined. Whether Defendant MNLI abided by this requirement does not prove that Defendant Kelly was the California agent on this Policy.

states in conclusory fashion that "there is not complete diversity between the parties," that Defendants cannot show the amount in controversy has been met, that Defendant Kelly is not a sham Defendant, and that Defendants have not provided "competent evidence" that Defendant Kelly was fraudulently joined. Declaration of Timothy D. Rand-Lewis ("Rand-Lewis Decl.") at 2:8-9, 11-13, ECF No. 27-1. This alone is insufficient to rebut the evidence Defendants have put forth.

In short, Plaintiffs provide no evidence showing that Defendant Kelly was involved with the Policy or Plaintiffs in any capacity. In reviewing the Complaint, it is readily apparent that all claims asserted against Defendant Kelly are predicated on the Policy between Defendant MNLI and Plaintiffs, and the claimed relationship with Defendant Kelly as the agent.[6] Under California law, "only a signatory to a contract may be liable for any breach." See United Computer Systems, Inc. v. AT & T Corp., 298 F.3d 756, 761 (9th Cir. 2002) (citing Clemens v. American Warranty Corp., 238 Cal. Rptr. 339 (Cal. Ct. App. 1987)). As such, and in light of the evidence Defendants have put forth that

---

[6] Against Defendant Kelly, Plaintiffs claim: breach of contract, breach of fiduciary duties, and violation of the Consumer Legal Remedies Act. Compl. at 1. Against Defendants jointly, Plaintiffs assert: violation of Business & Professions Code Section 17200, intentional infliction of emotional distress, fraud, negligent misrepresentation, concealment, and elder abuse. Id.

Defendant Kelly was not involved with the Policy, there is no showing that any of Plaintiffs' claims asserted against Defendant Kelly could be viable. See Spirtos v. Allstate Ins. Co., 173 F. App'x 538, 540 (9th Cir. 2006) (finding fraudulent joinder where defendants were not parties to an insurance contract and did not owe fiduciary duties to plaintiffs); see also Henry v. Associated Indem. Corp., 266 Cal. Rptr. 578 (Cal. Ct. App. 1990) (noting that California does not recognize a fiduciary relationship between insured and insurer). Separate from the allegation that Defendant Kelly was Plaintiffs' agent, the Complaint lacks any allegations demonstrating liability or wrongdoing on the part of Defendant Kelly himself. Without a showing by Plaintiffs of how Defendant Kelly is involved, the Court is left to conclude that Defendant Kelly is a sham defendant. This is especially so in light of the statements made by Defendant Kelly himself, two of his employees, and Defendant MNLI's Vice President, that Defendant Kelly never served as Plaintiffs' agent.

Because the Court finds that Defendant Kelly is a sham defendant, his citizenship is not relevant for the purposes of diversity jurisdiction. As such, the Court has diversity jurisdiction as both the amount in controversy has been met and complete diversity exists. Accordingly, the Court **DENIES** Plaintiffs' Motion to Remand based upon the information before the Court at this time.

2. <u>Defendants' Motion to Dismiss</u>

   a. *7-3 Conference*

As a preliminary matter, Plaintiffs argue that
Defendants' Motion to Dismiss should be denied for
failure to meet and confer, as required by Local Rule
7-3. The parties do not dispute that a 7-3 conference
never occurred. According to Defendant MNLI, it
invited Plaintiffs' counsel to meet and confer in
person or by telephone no fewer than four times,
followed by a fifth and final attempt on the day
Defendant MNLI filed its Motion to Dismiss.
Declaration of Edith S. Shea ("Shea Decl.") ¶¶ 2-3, ECF
No 31. Defendants argue that Plaintiffs declined each
of these invitations, and point to a series of emails
between Defendant MNLI's counsel and Plaintiffs'
counsel. <u>Id.</u> ¶3; <u>see</u> <u>id.</u>, Exs. 3, 5, 7. However, upon
review of these emails, it appears that parties'
counsel were discussing meeting and conferring
regarding issues pertaining to Plaintiffs' Motion to
Remand, and issues regarding redactions, with no
mention of meeting regarding the instant Motion to
Dismiss. <u>See</u> <u>id.</u>, Exs. 1-8. While it is unclear
whether true efforts were made to meet and confer prior
to the filing the Motions to Dismiss, Plaintiffs have
not explained how this has prejudiced them in any way.
<u>See</u> <u>Carmax Auto Superstores Cal. LLC v. Hernandez</u>, 94
F. Supp. 3d 1078, 1088 (C.D. Cal. 2015) ("Failure to
comply with the Local Rules does not automatically

require the denial of a party's motion, however, particularly where the non-moving party has suffered no apparent prejudice as a result of the failure to comply."). In light of this, and "based on the law's strong preference to determine cases on their merits," Summer v. Berryhill, No. 16-cv-01872-BLF, 2017 U.S. Dist. LEXIS 109841, at *9 (N.D. Cal. July 14, 2017), the Court will exercise its discretion to consider the merits of the Motions.

### b. *Defendant Kelly's Joinder*

Plaintiffs argue that Defendants' Motion to Dismiss should be denied because Defendant Kelly did not timely file his Motion, and that his Motion does not abide by the requirements of Local Rule 7-5. First, Defendant Kelly filed his Motion on May 7, 2019, which Plaintiffs argue is untimely under Fed. R. Civ. P. 81(c) because Defendant Kelly was required to respond to the Complaint no later than seven days after removal—April 29, 2019. While the Court agrees with Plaintiffs, there is no indication that Defendant Kelly's late filing has prejudiced Plaintiffs. For the same reasons discussed above as to the lack of a 7-3 conference, the Court declines to dismiss Defendants' Motion on this reason alone.

Next, pursuant to Local Rule 7-5, a "brief but complete memorandum in support thereof and the points and authorities" are to be filed with the notice of a motion. Plaintiffs argue that Defendant Kelly's Motion

fails to include an adequate notice or memorandum of points and authorities. Defendant Kelly filed a Notice of Joinder in which he joined and adopted the arguments and authorities submitted by Defendant MNLI in its Motion to Dismiss [20]. However, as Plaintiffs point out, Defendant Kelly's Motion fails to address the third, fourth, and tenth causes of action asserted against Defendant Kelly only. Defendants argue that Defendant MNLI's Motion does address all thirteen claims, because it is premised upon the statute of limitations, the failure to plead fraud with particularity, and Complaint's reliance upon MNLI's conduct expressly permitted by the Policy—which apply to all thirteen claims. As discussed in further detail below, the Court only analyzes the statute of limitations issue at this juncture, and does not reach the remainder of the arguments briefed. Because Defendant MNLI's arguments regarding the statute of limitations applies equally to the individual claims against Defendant Kelly, there is no prejudice against Plaintiffs in considering Defendants' Motion, despite Defendant Kelly's failure to address the claims brought specifically against him. As such, the Court will exercise its discretion to consider the merits of Defendants' Motion.[7] <u>See</u> C.D. Cal. L.R. 7-4 ("The Court

---

[7] Had the Court reached the substantive claims, Defendant Kelly's Motion would be insufficient under Local Rule 7-5, providing the Court proper grounds to deny his Motion altogether.

*may* decline to consider a motion unless it meets the requirements of L.R. 7-3 through 7-8") (emphasis added).

### c. *Statute of Limitations*

"A claim may be dismissed as untimely pursuant to a 12(b)(6) motion 'only when the running of the statute [of limitations] is apparent on the face of the complaint.'" <u>United States ex rel. Air Control Techs. v. Pre Con Indus.</u>, 720 F.3d 1174, 1178 (9th Cir. 2013) (quotation omitted). "In fact, a complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." <u>Supermail Cargo, Inc. v. United States</u>, 68 F.3d 1204, 1207 (9th Cir. 1995).

### i. *Discovery Rule*

A federal court sitting in diversity applies the substantive law of the state, including the state's statute of limitations." <u>Albano v. Shea Homes Ltd. P'ship</u>, 634 F.3d 524, 530 (9th Cir. 2011) (citation omitted). "[O]rdinarily, the statute of limitations runs from 'the occurrence of the last element essential to the cause of action.'" <u>Aryeh v. Canon Bus. Solutions, Inc.</u>, 55 Cal. 4th 1185, 1191 (2013) (citation omitted). "An important exception to the general rule of accrual is the 'discovery rule,' which

postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." <u>Fox v. Ethicon Endo-Surgery, Inc.</u>, 35 Cal. 4th 797, 806 (2005).

"A plaintiff has reason to discover a cause of action when he or she 'has reason at least to suspect a factual basis for its elements.'" <u>Fox</u>, 35 Cal. 4th at 807 (citation omitted). "[T]o rely on the discovery rule for delayed accrual of a cause of action, '[a] plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence.'" <u>Id.</u> at 808 (second alteration and emphasis in original) (citation omitted).

Here, Defendants argue that all thirteen of Plaintiffs' claims are barred by their respective statute of limitations. Of all claims asserted, the longest applicable statute of limitations is four years.[8] All of Plaintiffs' claims stem from the same

_____

[8] The applicable statute of limitations for the claims asserted by Plaintiffs are detailed as follows. Four years: breach of contract, Cal. Civ. Proc. Code § 337; violations of Cal. Bus. & Prof. Code § 17200; elder abuse, Cal. Welfare and Institutions Code § 15610.7; and breach of fiduciary duty premised upon alleged fraud, Cal. Civ. Proc. Code §§ 340.6(a). Three years: claims for fraud, negligent misrepresentation, and concealment, Cal. Civ. Proc. Code § 338(d); and claims for violations of Consumer Legal Remedies Act § 1750, Cal. Civ. Code § 1783. Two years: intentional infliction of emotional distress,

underlying theory that Defendants wrongfully raised
premium costs as an effort to ultimately force a lapse
of the Policy.  This began by a series of
communications between Rand and Defendant MNLI leading
up to termination of the Policy on April 15, 2017, in
which Plaintiffs allege that Rand demanded an
accounting and justification of premium costs that
Defendant MNLI never provided.  Compl. ¶¶ 11-15.
Plaintiffs did not attach any such letters as exhibits
to the Complaint, but Defendants now point to the
letters that were provided as exhibits to the
Declaration of Nick Nelson re Defendant MNLI's Notice
of Removal [6].  Ordinarily, a court may look only at
the face of the complaint to decide a motion to
dismiss." Van Buskirk v. Cable News Network, Inc., 284
F.3d 977, 980 (9th Cir. 2002).  However, "[a] court may
consider evidence on which the complaint 'necessarily
relies' if: (1) the complaint refers to the document;
(2) the document is central to the plaintiff's claim;
and (3) no party questions the authenticity of the copy
attached to the 12(b)(6) motion." Marder v. Lopez, 450
F.3d 445, 448 (9th Cir. 2006) (internal citations
omitted).  The court may treat such a document as "part
of the complaint, and thus may assume that its contents
are true for purposes of a motion to dismiss under Rule
12(b)(6)." Id. (citing United States v. Ritchie, 342

Cal. Civ. Proc. Code § 335.1; and alleged breach of an oral or
implied contract, Cal. Civ. Proc. Code § 339(1).

F.3d 903, 908 (9th Cir. 2003)). Here, Plaintiffs do not contest the authenticity of the letters between Rand and Defendant MNLI, and Plaintiffs' Complaint does "necessarily rely" on the content of these letters, as it directly references and quotes portions of the several demands Rand made to MNLI regarding the increased premiums. Compl. ¶ 12. Thus, the Court may appropriately consider the letters.

Defendants argue that the letters demonstrate Rand's expressed conviction that he had been harmed by Defendants' alleged wrongdoing, and was aware of his right to file suit, as early as 2012.[9] On May 1, 2012, Rand sent a letter to Defendant MNLI asserting that there was a "major question as to how [MNLI] ha[s] determined [the] premium which is being paid under protest," and demanding a "full and complete accounting." Declaration of Nick Nelson re Removal ("Nelson Decl.") ¶ 12, Ex. 7, May 1, 2012 Letter, ECF No. 6-7. Defendant MNLI sent a premium payment history in response, and on June 6, 2012, Rand replied that this was "grossly insufficient," asserting the same complaints as before. See id. Rand next followed up

---

[9] Although the Rand 1992 Irrevocable Trust is the current owner of the Policy, it had appointed Rand as its agent and instructed Defendant MNLI to direct Policy communications to Rand's mailing address, thus imputing any knowledge by Rand to the Plaintiffs—the Trust, Rand-Lewis, and Rand-Luby as trustees. See Nelson Decl., Ex. 2, Policy at 17 (designating address "same as insured" in reference to Rand and instructing billing notices, including premium notices, to be sent to Rand), ECF No. 6.

with an August 22, 2012 letter repeating that all payments made are in protest, and demanding that Defendant MNLI "rectify the situation by abiding by the terms and conditions" of the Policy, "refund[ing] any and all over-payments," and restoring the "cash value to the proper amount." See id., Ex. 10, August 22, 2012 Letter, ECF No. 6-10. Three years later, Rand sent letters to Defendant MNLI in February of 2016 repeatedly threatening to file suit. See id., Exs. 12-31 (Rand letters from February 26, 2016-December 5, 2016); Ex. 16, May 24, 2016 Letter ("We will be filing an action for declaratory relief and damages, as I have received no response to numerous requests.") Thus, Defendants argue that going off of the longest applicable period of four years, Plaintiffs had to file this suit by May 1, 2016, and because Plaintiffs filed this Complaint on March 13, 2019, their claims are barred.

Indeed, once Plaintiffs had reason to at least suspect Defendant MNLI's allegedly wrongful conduct of increasing the premiums, Plaintiffs were "required to conduct a reasonable investigation" and are "charged with knowledge of the information that would have been revealed by such an investigation." Fox, 35 Cal. 4th at 808. At first, it appears that Rand properly requested an accounting from Defendant MNLI and demanded a refund of over-payments in his August 22, 2012 letter, suggesting that he was aware he had been

injured through means of over-charged premiums. However, Rand did not send another letter to Defendant MNLI that the Court is aware of until three years later. The Complaint does not otherwise allege any sort of investigation by Rand or the other Plaintiffs during those three years. See Adams v. United of Omaha Life Ins. Co., No. SACV 12-969-JST (JPRx), 2013 WL 12113225, at *4-6 (C.D. Cal. Jan. 10, 2013) (dismissing complaint for fraudulent claims related to a life insurance policy as barred by statute of limitations in part because plaintiff requested an accounting of insurance premiums, but after never receiving it, did nothing to further investigate for two years, failing to show that "despite diligent investigation of the circumstances of the injury, he . . . could not have reasonably discovered facts supporting [his] cause[s] of action within the applicable statute of limitations period'") (citing Fox, 35 Cal. 4th at 808).

Plaintiffs argue that regardless of these initial communications, the date on which the Policy was "terminated"—April 15, 2017—is the date that controls. As such, Plaintiffs contend that this Action is timely because Plaintiffs filed their Complaint in state court on March 13, 2019, within two years of the termination date. Additionally, Plaintiffs argue that part of their claims against Defendant MNLI include its failure to properly notify the Plaintiff policy owners of premiums due and the Policy's termination in 2017.

Plaintiffs further argue that they had been unaware, and are still unaware of, the undisclosed "formula" Defendant MNLI used to raise premiums, and thus require the accounting still to determine damages.

The Court finds Plaintiffs' arguments unpersuasive. As the Complaint stands now, the crux of Plaintiffs' allegations rest on Defendant MNLI's practice of raising premiums from as early as 2012 to "try to force a policy lapse." Compl. ¶¶ 4, 12. The focus of this analysis is on when Plaintiffs first suspected the wrongdoing—that is, when they first suspected improper premium increases. See Fox, 35 Cal. 4th at 807 ("Rather than examining whether [a] plaintiff[ ] suspect[s] facts supporting each specific legal element of a particular cause of action, [courts] look to whether [a] plaintiff[ ] [has] reason to at least suspect that a type of wrongdoing has injured [him]."). Although the Court declines to make explicit findings at this early stage, the allegations in the Complaint lend towards the conclusion that Plaintiffs seemingly knew of the raised premiums and suspected wrongdoing since as early as 2012. The fact that Plaintiffs ultimately suffered damages from Defendant MNLI's method of increasing premiums in the form of the Policy lapse, regardless of its motivation, would thus not extend the applicable statute of limitations. It is the origin of the allegedly wrongful conduct—raising the premiums—and not the ill effects from such conduct

that controls.  See Rae v. Bank of Am., N.A., No. CV
16-8932 PA (Ssx), 2017 WL 447306, at *3 (C.D. Cal. Feb.
1, 2017) ("That [p]laintiff may continue to suffer the
ill effects from [defendant's] allegedly tortious
conduct does not toll or extend the applicable statutes
of limitations."); see also Davis v. Krasna, 121 Cal.
Rptr. 705, 713 (Cal. Ct. App. 1975) ("To delay the
running of the period of limitation only until
defendant's acts furnished plaintiff with a more
certain proof of damages would contravene the principle
that victims of legal wrong should make reasonable
efforts to avoid incurring further damages.").

In their Opposition, Plaintiffs briefly put forth
an estoppel against limitations defense.  "An estoppel
against limitations defense usually 'arises as a result
of some conduct by the defendant, relied on by the
plaintiff, which induces the belated filing of the
action."  Spray, Gould & Bowers v. Associated Int'l
Ins. Co., 84 Cal. Rptr. 2d 552, 556 (Cal. Ct. App.
1999) (citation omitted).  "Four elements must

Without more alleged by Plaintiffs as to their
investigation into the wrongdoing following the initial
communications in 2012, and why they waited until 2019
to file suit, the Court concludes at this point that
accrual of Plaintiffs' claims began in 2012.
Consequently, the relevant limitations periods bar all
of Plaintiffs' claims.

ii. *Estoppel Against Limitations*

In their Opposition, Plaintiffs briefly put forth
an estoppel against limitations defense.  "An estoppel
against limitations defense usually 'arises as a result
of some conduct by the defendant, relied on by the
plaintiff, which induces the belated filing of the
action."  Spray, Gould & Bowers v. Associated Int'l
Ins. Co., 84 Cal. Rptr. 2d 552, 556 (Cal. Ct. App.
1999) (citation omitted).  "Four elements must

ordinarily be proved to establish an equitable
estoppel: (1) The party to be estopped must know the
facts; (2) he must intend that his conduct shall be
acted upon, or must so act that the party asserting the
estoppel had the right to believe that it was so
intended; (3) the party asserting the estoppel must be
ignorant of the true state of facts; and, (4) he must
rely upon the conduct to his injury." Id.  However,
Plaintiffs only point to one allegation in the
Complaint, which states in conclusory fashion that
Defendants "are estopped from asserting any exclusions
under the Policy which may exist and have waived any
exclusions under the Policy which may exist."  Opp'n at
9:2-10; Compl. ¶ 29.   This alone is insufficient to
meet the pleading requirements for estoppel.

    Moreover, "[a]pplication of equitable estoppel
against the assertion of a limitations defense
typically arises through some misleading affirmative
conduct on the part of a defendant."  Spray, 84 Cal.
Rptr. 2d at 556.  Here, Plaintiffs do not allege any
sort of misrepresentation by Defendants that would
induce Rand to wait, to his detriment, to bring suit.
Cf. Black v. Jackson National Life Ins. Co., No. 5:15-
cv-1429-CAS (DTBx), 2016 WL 3452486, at *4-5 (C.D. Cal.
June 20, 2016) (finding triable issue as to estoppel
because defendant insurance company "represent[ed] that
the Policy did not contain a disability premium waiver,
[defendant] should have anticipated that plaintiff

would act . . . on that information and fail to submit a claim for a premium waiver").

Plaintiffs argue that estoppel applies because the Complaint alleges that Defendants specifically misled Rand and refused to explain the premiums calculations up to and including the date the Policy was terminated on April 15, 2017. Yet, nowhere in the Complaint do Plaintiffs allege facts supporting any of the four elements required for estoppel. Further, Defendants argue that Defendant MNLI's response to Rand's May 1, 2012 letter should have prompted Plaintiffs to file suit, rather than inducing them to delay filing an action. The Court agrees with Defendants. Plaintiffs allege that this response was "vague", "contrary to the actual Policy provisions", "did not state how the actual deduction had been calculated", and upon Rand's demand for a specific response, Defendant MNLI "failed to respond" and continued to raise the premium costs with no explanation. Compl. ¶ 12. Nothing in these allegations suggest that Defendant MNLI induced Rand to belatedly file suit, but rather, that Rand was on further notice of the alleged wrongdoing with no promise or misrepresentation from Defendant MNLI. Rand later threatened litigation as a result of the lack information Defendants provided in response to his requests for an accounting, but still waited to bring suit without any indication that Defendant MNLI induced him to do so. In short, Plaintiffs do not allege any

misrepresentations by Defendants since first raising premiums in 2012 that would induce waiting to file suit. Accordingly, the Court finds that Plaintiffs' estoppel against limitations argument fails.

Because the Court finds that Plaintiffs' claims are time-barred, and that Plaintiffs have not alleged sufficient facts justifying delay or estoppel, the Court **GRANTS** Defendants' Motion to Dismiss.

### d. *Leave to Amend*

A party may amend the complaint once "as a matter of course" before a responsive pleading is served. Fed. R. Civ. P. 15(a). After that, the "party may amend the party's pleading only by leave of court or by written consent of the adverse party and leave shall be freely given when justice so requires." Id. Leave to amend lies "within the sound discretion of the trial court." United States v. Webb, 655 F.2d 977, 979 (9th Cir. 1981). The Ninth Circuit has noted "on several occasions . . . that the 'Supreme Court has instructed the lower federal courts to heed carefully the command of Rule 15(a), F[ed]. R. Civ. P., by freely granting leave to amend when justice so requires.'" Gabrielson v. Montgomery Ward & Co., 785 F.2d 762, 765 (9th Cir. 1986)(quoting Howey v. United States, 481 F.2d 1187, 1190 (9th Cir. 1973)). Here, Plaintiffs have yet to file an amended complaint. It is possible that Plaintiffs could plead additional facts justifying their delay in filing suit or explaining further

investigation conducted.  As such, the Court **GRANTS**
leave to amend only as to allegations regarding the
application of the discovery rule and/or estoppel
against limitations.

### III. CONCLUSION

Based on the foregoing, the Court **DENIES**
Plaintiffs' Motion to Remand and **GRANTS** Defendants'
Motion to Dismiss **WITH LEAVE TO AMEND**.  Plaintiffs are
to file a First Amended Complaint within 21 days from
the date of this order.

**IT IS SO ORDERED.**

DATED: August <u>6</u>, 2019          <u>/S/RONALD S.W. LEW</u>

                              **HONORABLE RONALD S.W. LEW**
                              Senior U.S. District Judge